COMMONWEALTH vs. ROBERT M. LEE.

Worcester. January 5, 1981. — May 5, 1981.

Present: HENNESSEY, C.J., BRAUCHER, WILKINS, LIACOS, & ABRAMS, JJ.

*Homicide. Search and Seizure, Plain view. Malice. Practice, Criminal,*
Instructions to jury.

Police officers who went to the defendant's home to arrest him for murder
pursuant to a lawful warrant were entitled to seize a shotgun which
they discovered in a bedroom closet when they went to the closet to
procure clothing for the defendant at his request. [509-510]
At a murder trial, the defendant was not prejudiced by any defect in
the judge's instruction on malice where the fact that a murder had
been committed was conceded by the defendant and the only issue
contested by him was the identity of the murderer. [510-513]
At the trial of an indictment for first degree murder, there was no such
evidence as would require the judge to charge the jury on involuntary
manslaughter resulting from wanton and reckless conduct. [513-514]
At a murder trial, there was sufficient evidence to warrant a finding of
guilt beyond a reasonable doubt. [514-515]

INDICTMENT found and returned in the Superior Court on
November 3, 1976.

The case was tried before *Ronan, J.*

*Elliot M. Weinstein* for the defendant.

*William E. Loughlin,* Assistant District Attorney, for the
Commonwealth.

LIACOS, J. This is a murder for hire case. The defense
was alibi. A Worcester County jury convicted the defend-
ant of murder in the first degree on May 26, 1977. He ap-
peals from the conviction under G. L. c. 278, §§ 33A-33G.

The defendant argues that the trial judge committed re-
versible error by his jury instructions on malice, his refusal
to include a charge on involuntary manslaughter, his denial
of the defendant's motion for a directed verdict, and his

misapplication of the plain view doctrine in denying the defendant's motion to suppress a gun seized from his home. We consider each of these claims of error and conclude by affirming the conviction.

The Commonwealth presented evidence that, on the evening of August 26, 1976, Angel Santos Davilla was mortally wounded by a shotgun blast through a window of his home in Sterling. The victim, still alive, was transported to a hospital where he died of the gunshot wounds some twenty-five days later, without identifying his assailant. The principal witness for the prosecution was Janet Brady, who had been indicted with the defendant but subsequently pleaded guilty to a conspiracy charge.[1] Brady testified that she and the victim had been living together, along with her children from a previous marriage, in the home where the shooting took place. Brady stated that, as her relationship with the victim deteriorated over the summer of 1976, she looked for "someone to pay to do him harm." She contacted one DeCot, who in turn put her in contact with the defendant. Brady described several meetings with the defendant in local bars and in the back office of her place of work during which they made plans to "take care of" Davilla. In addition to $500 which Brady gave him at the outset, the defendant demanded $2,000. On the Monday before the shooting, Brady paid Lee the $2,000. They met again to work out the details: Brady would see that her children and dogs were out of the house when Lee came to "do it." Brady acknowledged that she had revealed to her son and two of his friends that she had arranged to have Davilla "taken care of."

Police officers investigating the shooting found a single yellow Sears shotgun shell outside the victim's house. There was expert testimony that the spent shell came from a 20-

---

[1] Brady was sentenced to fifteen to twenty years at the Massachusetts Correctional Institution at Framingham. Lee was tried only for murder; the conspiracy indictment against him was filed on motion of the Commonwealth.

gauge shotgun. The lead fragments found on the stairway inside the victim's house, as well as those extracted from his body during the autopsy, were No. 8 shot. The officers who arrested Lee on August 29 discovered in his closet a 20-gauge Remington shotgun and five yellow Sears 20-gauge shotgun shells filled with No. 8 shot. The police subsequently obtained a warrant and seized the gun and shells.

The testimony of neighbors of the victim indicated that the shooting occurred about 8:45 P.M. on August 26, 1976. A small reddish car with a noisy muffler was seen being driven away from the scene. The defendant's wife owned a red Toyota automobile. Other witnesses testified that sometime between August 23 and 26 Lee picked up the shotgun in question, which he had loaned earlier to a friend.

Presenting an alibi defense, Lee offered his own and corroborating testimony that he was at a bar some distance away from the victim's home from eight o'clock until well after nine on the evening in question. He sought to show that he was not driving his wife's red Toyota but a jeep that night, that the Toyota was not old or noisy, and that he did not recover his shotgun until Friday, August 27, the day after the shooting. Lee's version of his contact with Janet Brady was that she asked him to collect money from a Mr. "Warner." He claimed Brady concocted the story of the conspiracy with Lee in order to protect her son or someone else who actually shot Davilla.

1. *The motion to suppress.* The defendant claims error in the trial judge's refusal to suppress evidence of a 20-gauge shotgun and five yellow Sears 20-gauge "8 shot" shotgun shells discovered by police in his bedroom closet. The shotgun, and other objects not relevant to this appeal, were discovered in the defendant's partially open bedroom closet when the arresting officers accompanied the defendant to the bedroom so that he might dress himself prior to departing his home in their custody. The shells were discovered when the officers went to the closet to procure clothing for the defendant (at his request). The judge found the discovery to be inadvertent. The defendant con-

ceded the arrest to be based on probable cause and that it was made pursuant to a lawful warrant. In short, the defendant concedes the lawfulness of the arrest and of the presence of the police in the defendant's bedroom. He claims, however, that the discovery of the shotgun and shells was not inadvertent in that the police knew, or should have known, of their presence in the defendant's home. See *Commonwealth* v. *Cefalo*, 381 Mass. 319, 331 & n.9 (1980); *Commonwealth* v. *Accaputo*, 380 Mass. 435, 450 (1980); *Commonwealth* v. *Walker*, 370 Mass. 548, cert. denied, 429 U.S. 943 (1976). The answer to this argument is that the judge found the facts contrary to the defendant's claim.[2]

We have reviewed the transcript of the suppression hearing. The judge's findings are fully warranted by the evidence, and we will not disturb them, and we give substantial deference to his ultimate conclusions. *Commonwealth* v. *Meehan*, 377 Mass. 552, 557 (1979). The defendant's reliance on *Commonwealth* v. *Accaputo, supra,* is misplaced; there is nothing in that opinion inconsistent with the findings and rulings of the trial judge in this case.[3]

2. *The jury instruction on malice.* We address preliminarily the failure of the defendant's attorney at trial to object or take exception to the judge's instruction on malice. Although the defendant's trial took place after *Mullaney* v. *Wilbur*, 421 U.S. 684 (1975), it occurred prior to our decision in *Commonwealth* v. *Callahan*, 380 Mass. 821, 825-826 (1980), based in part on the ruling in *Sandstrom* v. *Montana*, 442 U.S. 510 (1979), that a charge which creates a mandatory presumption improperly forecloses the jury's function to determine the essential fact of malice. Because

---

[2] We need not discuss the elements of the plain view doctrine further here as they are not in issue in this case. Also, the cases cited in the text set forth that doctrine with clarity.

[3] We note that, although the shotgun and shells were inadvertently discovered, the police had prior information which would indicate a nexus between these objects and the crime for which the defendant was arrested. Nevertheless, there was no seizure until a proper search warrant was obtained.

the defendant's trial took place in 1977, before *Sandstrom, supra*, we take up his claim despite failure of trial counsel to object. *DeJoinville* v. *Commonwealth*, 381 Mass. 246, 250-251 (1980).

Lee challenges in particular the following section of the judge's instruction: "If a man intentionally, without any legal justification or excuse, uses upon the body of another a force, such as a sword, a machine gun, if one uses a force against the body of another, a force that as used would probably do grievous harm to that other and would create a plain and strong likelihood that the other would die as a result, then *that act is malicious within the meaning of the law* . . ." (emphasis supplied). Compare *Commonwealth* v. *Madeiros*, 255 Mass. 304, 309, 315 (1926). The judge avoided the terms "presumption" and "inference" which have been problematic in post-*Mullaney* appeals. See, e.g., *Commonwealth* v. *Callahan, supra* at 822-824 (use of term "presumption of malice" mandated jury to find malice from use of deadly weapon); *Commonwealth* v. *Medina*, 380 Mass. 565, 577-579 (1980) (inclusion of word "presumption" in malice instruction not error because other parts of charge correctly explained permissible inference); *Lannon* v. *Commonwealth*, 379 Mass. 786, 793 (1980) (use of word "inference" rather than "presumption" of malice avoided *Sandstrom* error); *Gibson* v. *Commonwealth*, 377 Mass. 539, 542-543 (1979) (where charge made clear that "presumption" permitted jury's inference, no *Mullaney* error); *Commonwealth* v. *McInerney*, 373 Mass. 136, 148-151 (1977) (no error to charge that "malice may be inferred").

The defendant contends the charge to have been fatally defective under cases such as *Commonwealth* v. *Callahan, supra*. The Commonwealth contends that the charge must be viewed as a whole. *Commonwealth* v. *Sellon*, 380 Mass. 220, 231-232 (1980). Under this view of the charge, the Commonwealth urges, the charge given conveyed an appropriate impression to the jury, placing the burden of proof on all elements of the crime, including malice, on the prosecution. We need not parse or analyze this charge in the detail

which the defendant urges on us. We think it clear, on alternative grounds, that the defendant fails to show error even if we assumed the defendant's analysis of the charge to be valid.

Whether the victim had been murdered was not in dispute in this trial.[4] Malice is a common ingredient of both murder in the first degree and murder in the second degree. *Commonwealth* v. *Campbell*, 378 Mass. 680, 686 (1979). The propriety of the charge as to malice was not in issue. The case was tried and argued by both parties on the theory that a murder had been committed. The issue contested by the defendant was solely that of the identity of the murderer. In such circumstances, the failure to object to the charge as to malice cannot be attributed to inadvertence or lack of knowledge of evolving constitutional doctrine. Rather, the failure to object reflects a conscious choice of trial strategy by defense counsel.[5] We think our language in *Commonwealth* v. *Johnson*, 374 Mass. 453, 465 (1978), disposes of the defendant's claim of error: "We look askance when counsel who has tried a case, without success, before a judge and jury on one theory of law, then attempts to obtain appellate review on an entirely different theory which was never advanced or suggested at the trial and which is not based on any objection or exception. Our view is the same notwithstanding the fact that the defendant is being represented on these appeals by counsel other than the one who represented him at the original trial. Neither the conventional type of appellate review permitted in a criminal case, nor the special type prescribed by G. L. c. 278, § 33E, for 'capital case,' is intended to afford an opportunity, from the vantage point of hindsight, to comb the trial record for interesting questions which could have been, but in fact were not, raised at the trial, *or to attempt to convert the consequences of unsuccessful trial tactics and strategy into alleged errors by the judge*" (emphasis sup-

---

[4] See our discussion *infra* as to the defendant's claim that an involuntary manslaughter instruction should have been given by the judge.

[5] Appellate counsel did not represent the defendant at trial.

plied). Cf. *Commonwealth* v. *Shelley*, 381 Mass. 340, 349 (1980). See also *Commonwealth* v. *Underwood*, 358 Mass. 506, 509-510 (1970).

The evidence here raised no issue of justification, mitigation, or lack of intent on the part of the perpetrator. Rather, the identity of the killer was the paramount consideration. This case is thus factually distinguishable from those in which malice is a pivotal element in the jury's deliberation. E.g., *Sandstrom, supra* at 520-521 (knowledge, intent sole element at issue); *Commonwealth* v. *Repoza*, 382 Mass. 119, 134-135 (1980) (stabbing during street fight); *Reddick* v. *Commonwealth*, 381 Mass. 398, 404-405 (1980) (self-defense claim); *Commonwealth* v. *McInerney*, 373 Mass. 136, 141 (1977) (claim of lack of intent to hurt victim).

The charge to the jury focused squarely on the fundamental questions of the credibility of the witnesses and the identity of the killer.[6] Regarding the charge as a whole, the defendant alleges no defect in the instructions on premeditation, the reasonable doubt standard, or the over-all burden of proof of guilt, and we find the charge proper in these crucial respects.

3. *Failure to charge on manslaughter.* The defendant argues that the judge should have instructed the jury on the alternative charge of involuntary manslaughter resulting from wanton and reckless conduct. In deciding whether instructions on a lesser offense are required, we are guided by the language of our prior decisions. First, if the evidence at trial is such that the jury could find the defendant guilty of manslaughter rather than murder, it is error to refuse to give such instruction. *Commonwealth.* v. *Johnson*, 379 Mass. 177 (1979). *Commonwealth* v. *Campbell*, 352 Mass. 387, 392 (1967). On the other hand, it is error to give such an instruction over the defendant's objection where

---

[6] The judge included in his charge a view of the evidence permitting the jury to find assault and battery if the gunshot wound did not cause death. Such a finding would be based on causality and not on factors which might mitigate murder to involuntary manslaughter.

there is no supporting evidence of the lesser crime. *Commonwealth* v. *Caine*, 366 Mass. 366, 375 (1974).

The defendant presents on appeal a view of the evidence that we cannot recognize from the proceedings below. Conceding for the purpose of this argument, that the defendant fired the shotgun, he claims he did so intending only to injure and not to kill. To buttress his claim, the defendant represents that, being an experienced military marksman, he knew better than to use a 20-gauge shotgun to kill a human being. He also claims, apparently ignoring the inconsistent claim of expertise, that the victim's chest wounds resulted from a shot actually aimed at his leg or foot. In addition, the defendant urges that Janet Brady's testimony evinces an intent only to "harm" or "take care of" the victim, an intent which may be ascribed to the defendant. This theory of the shooting was not presented to the jury; and we believe that instructions to this effect would only have caused confusion in the minds of the jurors. A judge is not required to charge on situations which are merely speculative and unsupported by the evidence. *Commonwealth* v. *Santo*, 375 Mass. 299, 307 (1978). Compare *Commonwealth* v. *Wallace*, 346 Mass. 9, 12-13 (1963) (pointing loaded gun constituted reckless conduct chargeable as involuntary manslaughter); *Commonwealth* ·v. *Atencio*, 345 Mass. 627, 629-631 (1963) (Russian roulette players committed involuntary manslaughter), with *Commonwealth* v. *Hicks*, 356 Mass. 442, 445 (1969) (deliberate kicking constituted unlawful use of force for which no in-voluntary manslaughter direction was required).

4. *Denial of the motion for a directed verdict.* From our examination of the Commonwealth's evidence in light of the applicable standard, we are satisfied that the prosecution met its burden to produce evidence sufficient to warrant the jury's inferences and conviction beyond a reasonable doubt. *Commonwealth* v. *Latimore*, 378 Mass. 671, 677-678 (1979). The Commonwealth's introduction of the defendant's shotgun and its similarity to the murder weapon did not create an unduly remote inference of the defendant's

complicity. See *Commonwealth* v. *Best*, 381 Mass. 472, 482-483 (1980) (convincing proof can consist of probable, if not necessary, inferences). Nor did the facts presented by the Commonwealth tend to sustain two inconsistent propositions. Contrast *Commonwealth* v. *Fancy*, 349 Mass. 196, 200 (1965). Ballistics evidence, together with the testimony of the self-claimed coconspirator and other witnesses, made out a prima facie case of murder which the jury might accept or reject as convincing beyond a reasonable doubt.

5. *Review under G. L. c. 278, § 33E.* Although the defendant has not argued the point, we have performed our duty under G. L. c. 278, § 33E, and have reviewed the entire record and transcript. We conclude that neither a new trial nor a reduction in the verdict is warranted.

*Judgment affirmed.*