COMMONWEALTH *vs.* ROY W. WHITE, JR.

Middlesex. January 9, 1984. — June 25, 1984.

Present: HENNESSEY, C.J., ABRAMS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Practice, Criminal,* Presumptions and burden of proof, Instructions to jury.
*Homicide. Malice. Due Process of Law,* Presumptions and burden of
proof. *Joint Enterprise.*

At a murder trial, the defendant was not prejudiced by any defect in the
judge's instructions on malice where the fact that a murder had been
committed was conceded by the defendant and the only issue contested
by him was whether he or a companion had shot the victim. [286-287]
O'CONNOR, J., dissenting on the ground that a correct definition of
malice was essential to a determination of the issue whether the defendant
had been a partner in a joint venture in which his companion had shot
the victim. [290-295]

On review of the record in a murder case, this court concluded that the judge's
instructions to the jury did not so confuse the theories of felony-murder
and joint venture to commit murder that his instructions improperly
shifted the burden of proof on malice to the defendant. [287-290] O'CON-
NOR, J., dissenting.

INDICTMENT found and returned in the Superior Court on
March 3, 1971.

The case was tried before *Tomasello,* J.

A motion for a new trial filed on December 22, 1981, was
heard by *Steele,* J.

After review was sought in the Appeals Court, the Supreme
Judicial Court ordered direct appellate review on its own initia-
tive.

*Laurence Hardoon,* Assistant District Attorney, for the Com-
monwealth.

*Elliot D. Lobel* for the defendant.

HENNESSEY, C.J. The defendant was convicted by a jury of
murder in the second degree. We affirmed on appeal. See
*Commonwealth* v. *White,* 363 Mass. 682 (1973). The question

presented in this case is whether a motion judge in the Superior Court was correct in allowing the defendant's motion for a new trial. That judge allowed the defendant's motion on the ground that the jury instructions given by a different judge in the Superior Court (trial judge) at the defendant's trial in 1971 violated the constitutional principle set forth in *Sandstrom* v. *Montana,* 442 U.S. 510, 524 (1979). See *DeJoinville* v. *Commonwealth,* 381 Mass. 246, 253-254 (1980). He allowed the defendant's motion on this basis even though the defendant raised no challenge to the instructions at the trial or on his earlier appeal to this court. See *Commonwealth* v. *White, supra.* The Commonwealth appealed. We transferred the case to this court on our own motion. We reverse.[1]

The motion judge began by making the following factual findings as required by Mass. R. Crim. P. 30 (b), 378 Mass. 900 (1979). They are for the most part identical to those we summarized in our earlier review of the defendant's conviction: "On the evidence presented at White's trial, the jury could have found the following facts. The victim, the defendant, one Pisa (who had already been convicted of murder of the victim before defendant's trial), and three other men had been drinking together for several hours one night and driving around in search of more liquor. The victim, who worked as a security guard, was noticed to have a gun and Pisa took it away from him. The defendant removed the bullets. Sometime later, the victim was knocked unconscious and was dragged to the side of the road by Pisa and the defendant and left there. The defendant drove the car a short distance, said 'He can recognize us,' stopped the car and backed up. The defendant and Pisa

---

[1] The defendant argues as a threshold matter that the Commonwealth's appeal should be dismissed because of "the inordinate and prejudicial delay" between the date the motion was allowed and the date the appeal was docketed. We disagree. The Commonwealth complied with Mass. R. A. P. 3 (a), as amended 378 Mass. 927 (1979), by filing its notice of appeal on March 24, 1982, the same day the defendant's motion was allowed. The appeal was entered on the docket of the Appeals Court under Mass. R. A. P. 10 (a) (2), as appearing in 378 Mass. 937 (1979), on March 16, 1983, the same day the notice of assembly of record was sent to the parties and the Appeals Court.

got out of the car. The victim was shot three times by either Pisa or the defendant. Defendant and Pisa were seen to have a wallet, ring and a watch when they got back in the car, which inferentially had been property of the victim. See *Commonwealth* v. *White,* 363 Mass. 682, 683 (1973). There was additional evidence that Pisa had struck the victim with the gun several times, ultimately rendering him unconscious . . . and testimony from one witness that Pisa told him that he had shot the victim and enjoyed it. . . . See *Commonwealth* v. *Pisa,* 372 Mass. 590, 592 (1977)."

After summarizing this factual background, the motion judge addressed the jury instructions of the trial judge. The motion judge focused first on the instructions regarding the element of malice aforethought necessary for murder in the second degree. These instructions included the following language: "In its broadest legal sense malice means the state of mind of a person, irrespective of his motive whenever he consciously violates the law. Under this concept every person of full legal capacity, who, without justification or excuse, willfully does an act which is prohibited and made punishable by law as a crime, acts maliciously. Thus, the rule of responsibility is founded on the plain and obvious principle that a person must be presumed to intend to do that which he voluntarily and willfully does, and that he must intend all the natural, probable and usual consequences of his acts." The motion judge observed that this portion of the instruction contained language found to shift unconstitutionally the burden of proof on the element of intent in violation of *Sandstrom* v. *Montana,* 442 U.S. 510 (1979).[2] He also observed, however, that the trial judge empha-

---

[2] "It is established that jury instructions creating either burden-shifting (mandatory) or conclusive presumptions violate a defendant's right, under the due process clause of the Fourteenth Amendment to United States Constitution, to have the State prove beyond a reasonable doubt every fact necessary to constitute the crime with which he is charged. *Sandstrom* v. *Montana,* 442 U.S. 510, 524 (1979). *Mullaney* v. *Wilbur,* [421 U.S. 684, 691-704 (1975)]. *In re Winship,* 397 U.S. 358, 364 (1970). 'The threshold inquiry . . . is to determine the nature of the presumption [the jury instruction] describes. . . . That . . . depends upon the way in which a reasonable juror could have interpreted the instruction.' *Sandstrom* v. *Montana, supra*

sized that the Commonwealth had the burden of proving intent and that a finding of intent may be based on *"reasonable inferences* drawn from certain acts performed by the individual" (emphasis in original). The motion judge next summarized the instructions regarding joint criminal venture as follows: "In explaining accomplice liability or joint venture . . . the judge's definition was limited to liability in a felony murder context. Furthermore, when the jury, after several hours of deliberation, questioned the court on the distinction between 'noninterfering witness to a crime, partner in concert for first degree murder, and a second degree murder,' the court again confused joint venture and felony murder. The judge also misstated the intent element in the joint venture setting, using the same *Sandstrom* language earlier employed in the ordinary murder context: He said 'In other words, he assumes the natural, probable consequences of the actions of the other party, he having associated with him in the intended perpetration of the offense.' "

The motion judge then concluded that "[h]aving closely examined the trial judge's instructions on malice, joint criminal venture, and felony murder, I conclude that the jury was erroneously instructed regarding the malice portion of the charge under the *Sandstrom* v. *Montana,* 442 U.S. 510 (1979), standard. The *Sandstrom* holding is retroactive in Massachusetts and since the joint venture instruction was also inaccurate, there is prejudice to the defendant."

1. In relying on *Sandstrom, supra,* and *Mullaney* v. *Wilbur,* 421 U.S. 684 (1975), and in recognizing that he offered no objections to the trial judge's charge, the defendant rests his motion on an alleged violation of constitutional principle to which we have given retroactive application, and to which the defendant asserts he had no genuine opportunity to object at trial or on prior appeal because the principle was not established until after the defendant's trial and prior appeal. *DeJoinville* v. *Commonwealth, supra* at 248. *Commonwealth* v. *Stokes,* 374 Mass. 583, 588-590 (1978). The motion judge's treatment

at 514. See *Commonwealth* v. *Moreira,* 385 Mass. 792, 794 (1982). In applying this test, we consider the impact of the charge as a whole." *Commonwealth* v. *Zezima,* 387 Mass. 748, 751 (1982).

of such issues in the first instance, and our review on appeal, concerns whether the constitutional error has been proved, and, if so, whether it may be deemed harmless beyond a reasonable doubt. *Commonwealth* v. *Rembiszewski,* 391 Mass. 123, 126 (1984). Applying this standard, we conclude, as to the trial judge's instructions on malice, that the issue was waived by the defendant. As to the judge's charge on felony-murder and joint venture, we conclude that it was a correct statement of the law.

2. The defendant first challenges the trial judge's instructions on malice. He argues the judge impermissibly shifted the burden of proof on the element of malice to him in violation of *Sandstrom* v. *Montana,* 442 U.S. 510 (1979). We have found in the past that jury instructions which violate *Sandstrom* constitute error. See *Commonwealth* v. *Zezima,* 387 Mass. 748, 751-755 (1982); *Commonwealth* v. *Stillwell,* 387 Mass. 730, 732-734 (1982). We have so found in cases where no objection based on *Sandstrom* was raised at trial or upon an earlier appeal on the theory that a defendant should not be penalized where his failure to object was due to a lack of guidance in the case law regarding an evolving constitutional standard. *Commonwealth* v. *Rembiszewski, supra* at 126. *DeJoinville* v. *Commonwealth, supra* at 250-251.

The Commonwealth urges that, read as a whole, the judge's charge as to malice was not in conflict with *Sandstrom.* We need not examine that argument, however, because the defendant's argument fails on another ground. An alleged violation of *Sandstrom* not raised at trial does not present prejudicial error warranting our consideration in a case which was tried and argued on the theory that a murder was committed. Rather, the issue may be considered waived by the defendant. See *Commonwealth* v. *Pisa,* 384 Mass. 362, 363 (1981); *Commonwealth* v. *Lee,* 383 Mass. 507, 512-513 (1981).

This principle is applicable here. In this case, as in that of the codefendant Pisa, whether a murder had been committed was not at issue. See *Commonwealth* v. *Pisa, supra* at 363. In his closing argument, the defendant's counsel stated to the jury that "may I say that in my mind there is no question but

that Mr. Deane was the victim of a murder, and that it was a tragic, tragic thing. . . . That fact can't be argued." Instead, White's case "was tried and argued by both parties on the theory that a murder had been committed." *Id.* If there was a *Sandstrom* type error, it clearly was not prejudicial to the defendant.

3. We cannot say that the defendant did not contest the issue of joint criminal liability. In his closing, counsel for the defendant stressed that the defendant was party to neither a murder nor a robbery: "All White was doing was drinking and driving. When he got the gun for the first time he took the bullets out. . . ." The defendant argues in his brief that "the court should have instructed that prior to being held responsible for the consequences of another's acts, the jury must be convinced first of the joint venture, then, its objectives, and that if those objectives include murder, that each shared the requisite intent." According to the defendant, the trial judge erroneously confused liability for felony-murder with liability for criminal joint venture. In so doing, the defendant argues, the trial judge shifted the burden of proof on the element of intent to participate in a criminal joint venture to murder on to the defendant.

We conclude the instructions of the trial judge did not violate *Sandstrom*.[3] As to felony-murder, these instructions are per-

---

[3] The relevant instructions were as follows: "There is another ground apart from the question of deliberately premeditated malice aforethought and extreme atrocity or cruelty, upon which a defendant may be found guilty of murder in the first degree. Under the statute, murder committed in the commission or attempted commission of a crime punishable by death or imprisonment for life, is murder in the first degree, even though there was no deliberately premeditated malice aforethought.

"If you find beyond a reasonable doubt that at the time of the shooting the defendant was engaged while armed with a dangerous weapon in attempting to rob the victim and in the course of such attempted robbery did kill such a person, then the defendant is not only guilty of murder, but he is guilty of murder in the first degree, for such robbery if committed would have been punishable by imprisonment for life, according to our statute.
". . . .

"In relation to the issue of whether the defendant was an accomplice with another, the rule of law is, that, if two or more persons combine to commit armed robbery and a homicide results, regardless of who may have fired the weapon resulting in death, each of the persons would be criminally re-

missible under *Sandstrom,* because malice aforethought is not an element of felony-murder. *Commonwealth* v. *Moran,* 387 Mass. 644, 647-650 (1982). The instructions also do not create an impermissible presumption with regard to liability for criminal joint venture.

The elements which must be proved by the Commonwealth to establish joint criminal venture liability differ from those

sponsible for the acts of his associates in the perpetration of the common design for which they had combined, and each could be found guilty of murder in the first degree, even though murder was not part of the original plan."

In response to questions by the jury, the trial judge gave additional instructions to the jury: "The third [question is] — please define the distinction between a non-interfering witness to a crime and the partner in concert for a first-degree murder, a second-degree murder.

"This question seems to be a bit confusing. I assume a witness is non-interfering and not taking part in it in any respect, it would be no responsibility for any crime committed by anybody.

"On the other hand, here you say 'a partner in concert for a crime of first-degree murder or second degree murder.' In that respect I will repeat what I said before insofar as the matter of accomplices is concerned and the rule of law is that if two or more persons combine to commit armed robbery and a homicide results, regardless of who may have fired the weapon resulting in death, each of the persons would be criminally responsible for the acts of his associate in the perpetration of the common design for which they had combined and each would be found guilty of murder in the first degree, even though murder was not part of the original plan.

"I might add to that the matter of the ordinary definition of what an accomplice is, which would be what you are talking about, partners, I assume. If a person joins in a venture to commit some identified offense by aiding, abetting, counseling or commanding its execution, that person is legally treated as assenting to the offense which is committed by his associates during the execution of the common purpose and which harm are the natural and probable consequences of the initial efforts and he is equally responsible for the offense committed.

"As an example of that, assuming that two individuals combined to rob a bank, let's say, and they go to the bank and one of the individuals is in the get-away car and the other individual is in the bank and with a gun shoots someone in the bank in the prosecution of that crime, then they get into the car and take off, the man that is driving the car is equally responsible for the crime committed by the man within the confines of the bank.

"In other words, he assumes the natural probable consequences of the actions of the other party, he having been associated with him in the intended perpetration of the offense. And if the party in the bank is guilty of first-degree murder, he would be equally guilty of the offense of first-degree murder."

required for felony-murder liability. The motion judge correctly observed that "[i]t is well settled that to hold a person criminally responsible for the acts of another, it must be shown·that the passive party shared the mental state required to convict the active party of the crime charged and that the passive party intentionally assisted the active party in that crime," quoting *Commonwealth* v. *Jones,* 6 Mass. App. Ct. 750, 758-759 (1978). Where the alleged joint criminal venture is to murder, liability is premised on a finding that a defendant had the requisite mental state· to murder. By contrast, such a finding of the mental state to murder is not required to find a defendant guilty of felony-murder. At the time of the defendant's trial, "[a] homicide committed in the commission or attempted commission of a felony [was] murder at common law." *Commonwealth* v. *Rego,* 360 Mass. 385, 395 (1971). See *Commonwealth* v. *Moran, supra* at 648. No specific intent to commit murder was required then or now. "We have said that '[t]he effect of the felony-murder rule is to substitute the intent to commit the underlying felony for the malice aforethought required for murder.' " *Id.* at 649, quoting *Commonwealth* v. *Matchett,* 386 Mass. 492, 502 (1982).

The defendant focuses on this distinction between felony-murder and joint criminal venture as to the mental state element of murder in his motion for a new trial. We agree that the distinction exists. On review of the whole record, however, we conclude that the trial judge did not so confuse these two theories of liability that his instructions violated *Sandstrom* v. *Montana, supra.* We determine that a reasonable juror would not conclude that the instructions raised either a conclusive or burden-shifting presumption as to the element of malice aforethought required to hold the defendant liable for criminal joint venture to commit murder.

The instructions of the trial judge clearly allow the jury to find the defendant guilty of murder without first finding he acted with malice aforethought. They do so, however, only where the jury first find the defendant was involved in an armed robbery. There is no suggestion that the defendant could be found guilty of murder in the second degree without a finding

that he acted with malice aforethought. Rather, the instructions do not directly address second degree murder liability in the context of joint criminal venture at all. The instructions, fairly viewed, omitted any specific instruction on joint criminal venture solely to commit murder and its elements.

4. In sum, despite the unfortunate use by the trial judge of the "natural and probable consequences" language, we conclude, in consideration of the entire charge to the jury, that the defendant has not shown that he is entitled to a new trial. There is no question that in the first challenged portion of the charge the jury were substantially instructed to return a guilty verdict only if personal active participation by the defendant in a homicide was found, and it is also clear that, as to that theory of guilt, the fact of murder was conceded and malice was not at issue. It is equally clear, as to the second challenged portion of the charge, that the jury were instructed to return a verdict of murder in the first degree only if they found the defendant actively participated in a felony (armed robbery) which resulted in a homicide. The defendant's contention that the trial judge's supplemental charge in response to special questions from the jury broadened the felony-murder charge to allow the jury to find guilt on a basis of joint venture to murder, and without a finding of the requisite mental state, is not supported by the record.

Accordingly, the allowance of the defendant's motion for a new trial is reversed.

*So ordered.*

O'CONNOR, J. (dissenting). Unless fairness to the Commonwealth demands such a result, this court should not hold that a defendant has waived a right as important as the right to assert constitutional error in jury instructions affecting the heart of the fact-finding process. In my view, there is no basis for such a holding in this case.

The court recognizes that we have given retroactive application to the *Sandstrom* principle. *Sandstrom* v. *Montana,* 442

U.S. 510, 524 (1979). In arriving at its conclusion that the defendant waived his right to challenge the judge's charge, the court correctly does not rely on the defendant's failure to object or except at trial. The *Sandstrom* principle was not developed until after the defendant's trial and direct appeal. *DeJoinville* v. *Commonwealth,* 381 Mass. 246, 248 (1980). *Commonwealth* v. *Stokes,* 374 Mass. 583, 588-590 (1978). Nevertheless, the court finds it unnecessary to decide the constitutional issue because it is persuaded that the defendant at trial waived his right to raise the issue by conceding in closing argument that "there is no question but that Mr. Deane was the victim of a murder." The court says that the *Sandstrom* issue, if not raised at trial, may be considered waived by the defendant "in a case which was tried and argued on the theory that a murder was committed." *Supra* at 286. Apart from citing *Commonwealth* v. *Pisa,* 384 Mass. 362 (1981), and *Commonwealth* v. *Lee,* 383 Mass. 507 (1981), for that proposition, the court does not explain *why* the defendant's concession that a murder took place, without also conceding his participation in it, constitutes a waiver of his right to insist on a constitutionally correct charge on malice. I believe that neither reason nor the cited cases demonstrate that a waiver occurred in this case.

Indeed, since the uncontroverted evidence showed that the victim was shot three times and died, there was "no question but that Mr. Deane was the victim of a murder." Counsel conceded no more than the obvious by admitting that whoever shot the victim did so with malice, thus committing murder. However, counsel did not concede that it was the defendant who shot the victim nor did he concede that, if Pisa shot the victim, the defendant shared Pisa's murderous intent and was therefore a joint venturer with him. The defendant relied on the presumption of innocence and left the Commonwealth to prove that he had participated in the killing with malice aforethought. The jury's request, during deliberations, that the judge "define the distinction between a non-interfering witness to a crime and the partner in concert for a first-degree murder, second-degree murder," demonstrates that whether the defendant was a partner in a joint venture in which Pisa shot the victim

was a live issue at trial. Resolution of that issue would require the jury to determine whether the defendant shared with Pisa the mental state required for murder. As the motion judge wrote in his memorandum of decision, "malice [was] a pivotal element in the jury's deliberation." Unlike the defendant in *Commonwealth* v. *Lee, supra,* the defendant took no action whatsoever that had the effect of withdrawing from the jury the issue of his malice. Unlike the defendant in *Lee,* the defendant here does not argue a position that is inconsistent with the one he took at trial. The defendant in the present case raised the issue of malice at trial, and he raises it here as well.

*Commonwealth* v. *Lee, supra,* was unique and critically different from this case. In *Lee,* the defendant was convicted of murder in the first degree. The Commonwealth's evidence had been that the defendant, acting alone and as a hired killer, killed the victim by a shotgun blast through a window of the victim's home. The defendant had presented an alibi defense, offering his own and corroborating testimony that when the shooting took place he was at a bar some distance away. On appeal, Lee argued that the constitutional principle articulated in *Sandstrom* had been violated by the judge's charge to the jury. Because the trial had taken place before *Sandstrom,* we considered the defendant's claim, *Commonwealth* v. *Lee, supra* at 510-511, but we then rejected it because "[t]he issue contested by the defendant was solely that of the identity of the [lone] murderer. In such circumstances, [we said], *the failure to object to the charge as to malice cannot be attributed to inadvertence or lack of knowledge of evolving constitutional doctrine. Rather, the failure to object reflects a conscious choice of trial strategy by defense counsel*" (emphasis added). *Id.* at 512.

By relying on an alibi defense, the defendant in *Lee* withdrew from serious consideration by the jury any issue except whether he or someone else fired from a shotgun into the victim's home. He could not reasonably have made an issue of the judge's charge on the burden of proving malice without impairing, indeed destroying, the credibility of his alibi. If he was not at the scene, whether the assailant had the state of mind re-

quired for murder was irrelevant. This court was satisfied, therefore, that even if defense counsel at the trial had possessed foreknowledge of the *Sandstrom* decision, as a matter of strategy he would not have raised the proof of malice issue. Having been satisfied of that, we disposed of the defendant's claim of error by saying that "[w]e look askance when counsel who has tried a case, without success, before a judge and jury on one theory of law, then attempts to obtain appellate review on an entirely different theory which was never advanced or suggested at the trial and which is not based on any objection or exception." *Commonwealth* v. *Lee, supra* at 512, quoting from *Commonwealth* v. *Johnson,* 374 Mass. 453, 465 (1978). Quoting *Johnson* further, we said in *Lee* that appellate review is not intended to afford an opportunity "to attempt to convert the consequences of unsuccessful trial tactics and strategy into alleged errors by the judge." *Id.* To allow a defendant to refrain from calling asserted error to the attention of the trial judge, as a matter of strategy, and then assert that same error on appeal, would be grossly unfair to the Commonwealth.

The present case is critically different from *Lee* precisely because it cannot fairly be said that the defendant here would have refrained from objecting to the judge's charge, as a matter of strategy, if he had had foreknowledge of *Sandstrom.* That cannot fairly be said because here the defendant relied on no defense that would have been undermined by such an objection. On the contrary, he put the Commonwealth to its burden of proving, as to him, all the essential elements of murder. Since malice was a live issue, unlike the situation in *Lee,* sound strategy would have demanded, not precluded, an objection to the judge's charge shifting to the defendant the burden of proving malice. The distinction we acknowledged in *Lee, supra* at 513, between that case and cases like the present one "in which malice is a pivotal element in the jury's deliberations," is crucial. The court appears to have lost sight of it in arriving at its holding today.

In concluding that the defendant waived his right to raise the *Sandstrom* issue, the court relies not only on *Commonwealth* v. *Lee, supra,* but also on *Commonwealth* v. *Pisa,* 384 Mass.

362 (1981). In so far as the *Sandstrom* issue is concerned, there is no distinction between *Pisa* and the present case. Both cases are appeals from actions taken on a motion for a new trial subsequent to a decision of this court on direct appeal. The two cases involve the same incident, and the defendant in each case challenges the judge's charge on the burden of proof on the issue of malice without having raised the issue at an earlier stage of the proceedings. In both cases the defendants did not rely on an alibi defense but, instead, left the Commonwealth to prove the indictments. This court affirmed the denial of the motion for a new trial in *Pisa, supra* at 363, "[f]or essentially the same reasons as advanced in *Commonwealth* v. *Lee,* 383 Mass. 507, 512 (1981)." In my view, the reasons advanced in *Lee* provide no more support for the decision in *Pisa* than they do for the court's decision here. I would not follow *Pisa.*

The court's opinion does not reach the question whether the jury instructions on proof of malice were erroneous. However, because I believe there was no waiver, I reach that question. I agree with the motion judge that the instruction that "a person must be presumed to intend to do that which he voluntarily and wilfully does, and that he must intend all the natural, probable and usual consequences of his acts" unconstitutionally shifted the burden of proof on the element of intent. *Sandstrom* v. *Montana,* 442 U.S. 510 (1979). *DeJoinville* v. *Commonwealth,* 381 Mass. 246, 253 (1980). *Commonwealth* v. *Callahan,* 380 Mass. 821, 823 (1980). The impact of that instruction was exacerbated by the "natural and probable consequences" language used by the trial judge in response to the jury's request during deliberations that he "define the distinction between a non-interfering witness to a crime and the partner in concert for a first degree murder, a second degree murder." Although the instructions contained statements about reasonable inferences and the Commonwealth's burden to prove the elements of the indictments, the instructions viewed as a whole, see *Commonwealth* v. *Zezima,* 387 Mass. 748, 751 (1982), did not make clear that the burden was on the Commonwealth to prove the defendant's malice without the aid of conclusive or

burden-shifting presumptions. Contrast *Commonwealth* v. *Repoza,* 382 Mass. 119, 134 (1980).

Since the defendant's motion for a new trial was based on violation of a constitutional principle to which this court gives retroactive application, and since that principle was not sufficiently developed at the time of trial or direct appeal to have afforded the defendant a genuine opportunity to raise that claim on those occasions, and since the defendant did not adopt a strategy at trial which would have precluded him from raising that claim at that time, the defendant is entitled to a new trial unless the error was harmless beyond a reasonable doubt. *Commonwealth* v. *Rembiszewski,* 391 Mass. 123, 126 (1984). *DeJoinville* v. *Commonwealth,* 381 Mass. 246, 250-251 (1980). *Commonwealth* v. *Harrington,* 379 Mass. 446, 455 (1980). The error clearly was not harmless beyond a reasonable doubt.

Whether the judge's charge with respect to felony-murder was correct is of no consequence. We cannot say that the jury found the defendant guilty of murder on a felony-murder theory rather than on a theory requiring traditional malice. See *Commonwealth* v. *White,* 363 Mass. 682, 684 (1973).[1] Since the conviction may have resulted from the jury's misunderstanding and misapplication of the Commonwealth's burden to prove malice, the motion judge correctly granted the defendant's motion for a new trial. See *Connecticut* v. *Johnson,* 460 U.S. 73 (1983); *Commonwealth* v. *Rego,* 360 Mass. 385, 395-396 (1971). An appellate court should not be deterred from affirming a motion judge's grant of a new trial because of a belief it may have concerning the defendant's guilt. If a defendant's guilt has not been determined by a jury after proper instructions, a new trial, as was ordered in this case, is required.

---

[1] It is unlikely that they found the defendant guilty on a felony-murder theory because they acquitted him of armed robbery, which was the only underlying felony that could have been found on the evidence, and they found him guilty of murder in the second, not the first, degree.