COMMONWEALTH vs. RICHARD REPOZA.

Middlesex. March 2, 1987. — July 23, 1987.

Present: HENNESSEY, C.J., WILKINS, LIACOS, ABRAMS, NOLAN, LYNCH, & O'CONNOR, JJ.

Practice, Criminal, Instructions to jury, Presumptions and burden of proof, Retroactivity of judicial holding. Due Process of Law, Presumption. Error, Harmless. Homicide. Malice. Intent.

Discussion of the principles stated in Francis v. Franklin, 471 U.S. 307 (1985), as they elucidate the holding of Sandstrom v. Montana, 442 U.S. 510 (1979), with respect to an apellate court's assessment of the possible impact of constitutionally erroneous jury instructions in a criminal case. [517-520]

The holding of Francis v. Franklin, 471 U.S. 307 (1985), concerning impermissible burden-shifting language in instructions to a jury, was fully retroactive to a murder case tried in the Commonwealth in 1978. [520]

Discussion of the standards of review in a criminal case where the defendant made no objection to burden-shifting language in jury instructions. [520]

Certain jury instructions, given in 1978 at a murder trial, that created a presumption unconstitutionally shifting the burden of proof on the issue of malice, did not meet the requirements set forth in Francis v. Franklin, 471 U.S. 307 (1985), where no other language in the charge explained the improper instructions sufficiently to ensure that a juror did not misunderstand the instructions or view them as burden-shifting. [521-522]

A new trial was required in a murder case where error in the judge's instructions on malice was not harmless and where the defendant's intent was in issue. [522] NOLAN, J., dissenting.

INDICTMENT found and returned in the Superior Court Department on July 11, 1978.

A motion for postconviction relief, filed on August 17, 1984, was assigned to and considered by Hiller B. Zobel, J.

After review by the Appeals Court the Supreme Judicial Court granted leave to obtain further appellate review.

The case was submitted on briefs.

Richard Repoza, pro se.

*Scott Harshbarger,* District Attorney, & *Fern L. Nesson,* Assistant District Attorney, for the Commonwealth.

ABRAMS, J. The question is whether *Francis* v. *Franklin,* 471 U.S. 307 (1985), requires us to grant the defendant's request for postconviction relief, Mass. R. Crim. P. 30 (a), 378 Mass. 800 (1978), following the affirmance of his conviction of murder in the second degree. See *Commonwealth* v. *Repoza,* 382 Mass. 119 (1980) (*Repoza I*). We conclude that the judge's charge impermissibly shifted the burden of proof to the defendant contrary to principles stated in *Francis* and that a new trial is required.

In 1978, a jury found the defendant guilty of murder in the second degree on an indictment charging him with murder in the first degree. We affirmed the conviction on direct appeal. See *Repoza I, supra.* In 1985, the defendant, with the aid of counsel, appealed from the earlier denial of a motion for postconviction relief. In his brief on appeal, he argued that the jury instructions, parts of which were erroneous because they created impermissible mandatory presumptions, failed to explain the erroneous language sufficiently, thereby violating the requirements of *Francis* v. *Franklin, supra,* a case decided after the defendant's motion was denied. The Appeals Court issued an order affirming the decision denying relief.[1] 22 Mass. App. Ct. 1110 (1986). We granted the defendant's application for further appellate review.

1. *Francis v. Franklin.* The question is the effect of *Francis, supra,* on the erroneous instructions discussed in *Repoza I,* but an understanding of *Francis* requires a brief discussion of *Sandstrom* v. *Montana,* 442 U.S. 510 (1979).

In *Sandstrom,* the Supreme Court of the United States held that the instruction "[t]he law presumes that a person intends the ordinary consequences of his voluntary acts," *Sandstrom, supra* at 513, violates the Fourteenth Amendment's require-

---

[1] On direct appeal, we had considered the burden-shifting instructions pursuant to G. L. c. 278, § 33E. Thus, the Appeals Court correctly reasoned, in an unpublished memorandum, that the issue was one more properly reserved for consideration by this court. See *Commonwealth* v. *Carballo,* 381 Mass. 227 (1980); *Commonwealth* v. *Riva,* 18 Mass. App. Ct. 713, 719 (1984).

ment that the State prove every element of a criminal offense beyond a reasonable doubt. The Court explained that "[u]pon finding proof of one element of the crime (causing death), and of facts insufficient to establish the second (the voluntariness and 'ordinary consequences' of defendant's action), Sandstrom's jurors could reasonably have concluded that they were directed to find against defendant on the element of intent. The State was thus not forced to prove 'beyond a reasonable doubt . . . every fact necessary to constitute the crime . . . charged,' [*In re Winship*, 397 U.S. 358, 364 (1970)], and defendant was deprived of his constitutional rights as explicated in *Winship*." *Id.* at 523. The Court stated that "whether a defendant has been accorded his constitutional rights depends upon the way in which a reasonable juror could have interpreted the instruction." *Id.* at 514. The Court reversed the defendant's conviction, declaring that a reasonable juror could have interpreted the instruction as establishing either a conclusive or a rebuttable presumption. Either interpretation, the Court determined, would violate due process because a reasonable juror could have interpreted the instruction as relieving the government of its burden of proof and as shifting the burden of proof to the defendant to disprove malice. The Court in *Sandstrom* did not focus its attention on whether and how language which impermissibly shifts the burden of proof may be cured by other language in the charge.[2]

In *Francis, supra,* the Court turned its attention to that very issue to clarify the effect of *Sandstrom*.[3] *Francis, supra* at

---

[2] The *Sandstrom* Court stated in a footnote that "[t]he potential for these [impermissible] interpretations of the presumption was not removed by the other instructions given at the trial. It is true that the jury was instructed generally that the accused was presumed innocent until proved guilty, and that the State had the burden of proving beyond a reasonable doubt that the defendant caused the death of the deceased purposely or knowingly. . . . But this is not rhetorically inconsistent with a conclusive or burden-shifting presumption. The jury could have interpreted the two sets of instructions as indicating that the presumption was a means by which proof beyond a reasonable doubt as to intent could be satisfied." *Sandstrom, supra* at 518 n.7.

[3] The *Francis* decision, *supra* at 317, explicitly states that both conclusive and rebuttable presumptions relieve the State of its affirmative burden of proof.

309, specifically concerns the limited category of criminal prosecutions in which intent is the pivotal element of the crime charged and the only contested issue at trial. The opinion accepts the general principle that constitutionally erroneous jury instructions are not to be viewed in isolation but rather in the context of the charge as a whole, so that a reviewing court can assess the possible impact of the error on the deliberations of a reasonable juror. *Id.* at 315. See *Commonwealth* v. *Adrey,* 397 Mass. 751, 755 (1986); *Commonwealth* v. *Medina,* 380 Mass. 565, 577-580 (1980).

The Court repeated its language in *Sandstrom,* see note 2, *supra,* that general instructions as to the State's burden and the defendant's presumption of innocence do not dissipate the error in instructing the jury impermissibly as to burdens. *Id.* at 319. The Supreme Court then stated that "[l]anguage that merely contradicts and does not explain a constitutionally infirm instruction will not suffice to absolve the infirmity" because "[a] reviewing court has no way of knowing which of the two irreconcilable instructions the jurors applied in reaching their verdict" (footnote omitted). *Id.* at 322.[4] The Court held "that contradictory instructions as to intent — one of which imparts to the jury an unconstitutional understanding of the allocation of burdens of persuasion — create a reasonable likelihood that a juror understood the instructions in an unconstitutional manner, unless other language in the charge *explains* the infirm language sufficiently to eliminate this possibility" (emphasis in original). *Id.* at 323 n.8.[5]

___

[4] We have reached the same result in cases in which instructions on reasonable doubt were conflicting. See, e.g., *Commonwealth* v. *Wood,* 380 Mass. 545, 548-550 (1980).

[5] In *Francis,* the impermissible instructions were "[t]he acts of a person of sound mind and discretion are presumed to be the product of the person's will, but the presumption may be rebutted" and "[a] person of sound mind and discretion is presumed to intend the natural and probable consequences of his acts but the presumption may be rebutted." *Francis, supra* at 309. The second instruction was followed by an instruction that "[a] person will not be presumed to act with criminal intention but the trier of facts, that is, the Jury, may find criminal intention upon a consideration of the words, conduct, demeanor, motive and all other circumstances connected with the

*Francis* determines that a reviewing court cannot have confidence in the propriety of a subsequent verdict of guilty unless some other portion of the charge not only contradicts the incorrect language but, through explanation, harmonizes it with the entire charge as well. *Francis* contemplates close scrutiny to determine whether language in the instructions not only corrects the erroneous language but also explains it.

2. *The standard of review.* Judicial holdings concerning impermissible burden-shifting language in instructions generally are applied retroactively. See *Hankerson* v. *North Carolina,* 432 U.S. 233 (1977); *Dietz* v. *Solem,* 640 F.2d 126, 130 (8th Cir. 1981). Because *Francis* develops the method by which appellate courts should review and evaluate a *Sandstrom* error, its holding is fully retroactive. See *Commonwealth* v. *Breese,* 389 Mass. 540, 543-544 (1983). However, the Supreme Court also has ruled that, in cases involving burden-shifting instructions, States may "insulate past convictions by enforcing the normal and valid rule that failure to object to a jury instruction is a waiver of any claim of error." *Hankerson, supra* at 244 n.8. See *Dietz, supra* at 132.

As a matter of State law, we have determined that we would not require lawyers to be clairvoyant and to object to instructions not yet identified as constitutional error. See *DeJoinville* v. *Commonwealth,* 381 Mass. 246, 248, 251 (1980); *Connolly* v. *Commonwealth,* 377 Mass. 527, 529-530 (1979); *Commonwealth* v. *Collins,* 374 Mass. 596, 599 (1978); *Commonwealth* v. *Stokes,* 374 Mass. 583, 588-591 (1978). We have said that, in cases in which erroneous malice aforethought instructions were given, we would review the instructions, being more tolerant in that review of instructions given before *Sandstrom,* and we would bring greater expectations and more careful scrutiny to malice instructions in cases which went to trial after the *Sandstrom* decision. See *Connolly, supra; Collins, supra; Stokes, supra.* Thus, while we did not insist on an objection, we followed a moderate approach in our analysis.

act for which the accused is prosecuted." *Id.* at 311-312. The Court concluded that the latter instruction was merely inconsistent with, and therefore inadequate to cure, the immediately preceding error. *Id.* at 322.

3. *The direct appeal.* Repoza's trial took place approximately one year before the *Sandstrom* decision. Pursuant to our policy to review such errors, on direct appeal and pursuant to G. L. c. 278, § 33E, we reviewed the instructions and determined that the instructions on malice indeed did violate the principles enunciated in *Sandstrom*. We determined, however, that "the judge's erroneous equating of malice implied or inferred to malice presumed was ultimately vitiated by his repeated and careful instructions reinforcing the principle that the burden of proof on every essential element of the crime invariably remains with the Commonwealth." See *Repoza I, supra* at 134. We concluded that the instructions did not require a new trial or the entry of a lesser degree of guilt.[6]

We recognized in *Repoza I, supra* at 132-133, that the malice instructions created an unconstitutional burden-shifting presumption on the issue of malice aforethought. No language in the rest of the charge explained these impermissible instructions sufficiently to ensure that a juror did not misunderstand the instructions or could not view them as burden-shifting. Language explaining the presumption of innocence and the Commonwealth's burden of proof, and stating that "[a]ll the presumptions of law independent of evidence are in favor of innocence," *Repoza I, supra* at 134, did not cure the possibility that, "[i]n light of the instructions on intent given in this case, a reasonable juror could thus have thought that, although intent must be proved beyond a reasonable doubt, proof of [stabbing the victim] and its ordinary consequences constituted proof of

---

[6] The defendant asserts that the failure to object to the instructions amounted to ineffective assistance of counsel. Because we had reviewed the instructions and concluded that they did not create a substantial likelihood of a miscarriage of justice, *Repoza I, supra* at 134-135 & n.8, there is no showing that "better work might have accomplished something material for the defense" (footnote omitted). *Commonwealth* v. *Satterfield,* 373 Mass. 109, 115 (1977). See *Commonwealth* v. *Saferian,* 366 Mass. 89, 96 (1974). Because *Sandstrom* had not been decided at the time of trial, an objection by counsel could not have been expected. As a result, we reviewed the instructions on appeal.

The defendant makes a number of other claims of ineffective assistance of counsel. Those claims either are without merit or without basis in the record.

intent beyond a reasonable doubt unless the defendant persuaded the jury otherwise." *Francis, supra* at 319. Clearly, the instructions at trial do not meet the requirements of *Francis*.

4. *Relief.* At Repoza's trial, the main contested issue was identification, not intent.[7] The jurors resolved the identification issue, finding beyond a reasonable doubt that the defendant was the individual who killed the victim. The jurors also clearly rejected a conviction of murder in the first degree. The error in the instructions which defined malice aforethought as an element of the crime of murder in the second degree admittedly was burden-shifting. The jurors may have rejected the conviction of murder in the second degree had the instructions on malice aforethought not been burden-shifting or had the impermissible instructions been "explained." Thus, the impermissible presumption language may have made a difference between a verdict of not guilty, guilty of murder in the second degree, or of manslaughter, a verdict which was consistent with the evidence and on which the judge instructed. We therefore reverse the order denying the defendant's motion and remand the matter to the Superior Court for a new trial.

*So ordered.*

---

[7] The dissent correctly notes that identification was the pivotal element at trial in the instant case. However, under G. L. c. 265, § 1, the degree of murder is for the jury. The higher degree of murder is based on the defendant's intent. Therefore, under our statute there is always an element of intent for the jury to determine in murder cases in which the defendant does not concede that a conviction of murder in the first or second degree would be warranted if the proper person were prosecuted. See, e.g., *Commonwealth* v. *Lee,* 383 Mass. 507, 512 (1981). At no point at either the trial or the direct appeal did the defendant concede that a murder, and not a manslaughter, had occurred. Thus, intent was a live issue and the error cannot be considered to be harmless beyond a reasonable doubt. Cf. *Commonwealth* v. *Shea,* 398 Mass. 264, 269-270 (1986); *Commonwealth* v. *Ely,* 388 Mass. 69, 74 (1983); *Commonwealth* v. *Tameleo,* 384 Mass. 368, 370 (1981).

It should be noted that the dissent does not disagree with the court's analysis of the *Francis* decision.

NOLAN, J. (dissenting). The unconstitutional instructions in this case were clearly harmless beyond a reasonable doubt because the defendant never contested the issue of malice. Identification was the only viable issue and despite the court's language to the contrary, the defendant all but conceded the fact that a murder was committed. Therefore, the erroneous language did not contribute to the defendant's conviction of murder in the second degree.

In *Commonwealth* v. *Lee*, 383 Mass. 507, 510-513 (1981), we recognized that the prejudicial effect of a *Sandstrom* violation is determined by the defense asserted at trial. Harmless error analysis was held to be particularly appropriate where the defendant does not dispute the Commonwealth's version of how the murder occurred, but only claims that he is not the murderer. *Id.* at 512. "In such circumstances, the failure to object to the charge as to malice cannot be attributed to inadvertence or lack of knowledge of evolving constitutional doctrine. Rather, the failure to object reflects a conscious choice of trial strategy by defense counsel." *Id.*

At trial, the defendant's attorney did not object to these instructions despite the fact that the prosecutor alerted the judge to the erroneous language. Nor did defense counsel seek review of these instructions on appeal the first time around. The most plausible explanation for these decisions is that counsel realized that the "evidence here raised no issue of justification, mitigation, or lack of intent on the part of the perpetrator." *Id.* at 513.

Therefore, I dissent.