## COMMONWEALTH *vs.* DONALD J. J. LENNON.

Middlesex.  December 2, 1986. — March 16, 1987.

Present: HENNESSEY, C.J., WILKINS, ABRAMS, LYNCH, & O'CONNOR, JJ.

*Homicide. Evidence*, Opinion, Relevancy and materiality. *Practice, Criminal*, Instructions to jury, Capital case.

At a murder trial, an opinion of the victim's wife that the defendant, with whom she had had an affair, was the killer of her husband should not have been admitted in evidence; however, in the circumstances, no prejudice to the defendant resulted, where the reasons for her opinion were obvious and were fully developed during the trial, and where the case against the defendant was not strengthened by the admission of her opinion. [444-446]

On appeal from a conviction of murder in the first degree, this court, pursuant to its powers under G. L. c. 278, § 33E, directed the entry of a verdict of guilty of murder in the second degree where the judge's instruction to the jury on deliberate premeditation to which no exception was taken, improperly equated deliberate premeditation, with the "intent to kill" component of malice aforethought, thereby relieving the Commonwealth of its burden to prove not only malice but also deliberate premeditation in order to convict of murder in the first degree. [446-450]

INDICTMENT found and returned in the Superior Court Department on November 30, 1982.

The case was tried before *Hiller B. Zobel*, J.

*Richard Zorza*, Committee for Public Counsel Services, for the defendant.

*Fern L. Nesson*, Assistant District Attorney, for the Commonwealth.

WILKINS, J.  The defendant appeals from his conviction of the murder in the first degree of John Hess. About 6 A.M. on May 21, 1982, John Hess, who presumably had been jogging on Fort Pond Road in Acton, was shot three times in the neck and head. Another jogger, who was about 275 yards away, had noticed a shiny red vehicle off to the side of the road and

someone in jogging clothes standing beside it. He heard three shots in rapid succession and saw the body of the person next to the car fall to the road and the vehicle leave. Another jogger, farther away, also heard the shots, saw a figure falling, and saw the back portion of a shiny red sports car which moved away. The police were called.

The victim's wife went looking for her husband around 8 A.M., could not find him, and called the police. A State trooper and an Acton police inspector came to her home. After the police officers saw a picture of her husband, they told Mrs. Hess that her husband was dead. Both the police and Mrs. Hess testified that they then asked her whether she knew of anyone who would want to harm her husband. She told them that the defendant was a man with whom she had had a brief affair,[1] that he had been following her husband around while he was jogging, that he had a gun, and that he owned a reddish-orange vehicle. She said that she knew the defendant had killed her husband.

To deal with the issues raised on appeal, we need not recite the evidence against the defendant in detail. He makes no claim that it was insufficient to warrant the jury's verdict. He challenges (a) the admission of testimony that Mrs. Hess said she knew the defendant had killed her husband and (b) the judge's charge on deliberate premeditation. We conclude that the defendant was not prejudiced by the admission of Mrs. Hess's opinion that he had killed her husband, but that the judge's erroneous instruction on deliberate premeditation requires that we direct the entry of a verdict of murder in the second degree.

1. We discuss first the defendant's objection to the admission of testimony that Mrs. Hess told the two police officers at her home, shortly after the killing, that she knew of someone who would want to harm her husband. She testified first to this effect. Later, one of the two policemen testified that she said she knew someone who would want to kill her husband. The

---

[1] Mrs. Hess testified at trial to an on-and-off relationship with the defendant over a period of a year and three months.

second police officer testified that she said, "I know who did it," and that she identified the defendant.[2] The defendant argues here that Mrs. Hess's opinions that he was the one who killed her husband and was a person who would want to harm him were inadmissible and so prejudiced him as to require reversal of his conviction.[3]

Opinions concerning who the perpetrator of a crime was or who was a suspect are normally irrelevant in a criminal trial, whether contained in a spontaneous utterance or otherwise. See *Commonwealth* v. *Mandeville*, 386 Mass. 393, 398 (1982) (spontaneous statement of spouse of victim that he suspected the crime was committed by someone other than defendant was inadmissible as an irrelevant expression of opinion); *Commonwealth* v. *Hesketh*, 386 Mass. 153, 161-162 (1982) (opinion that person other than defendant was police's prime suspect, inadmissible); *Commonwealth* v. *Ross*, 339 Mass. 428, 435 (1959) (opinion of investigating detective that he had no doubt defendant had participated in robbery was irrelevant and should not have been admitted); *Commonwealth* v. *Duff*, 245 Mass. 81, 85 (1923) (testimony that defendant's wife suspected defendant of committing the crime prejudicially admitted). Cf. *Commonwealth* v. *Pleasant*, 366 Mass. 100, 102-103 (1974) (admission of witness's statement that she had heard that defendant had committed the crime, prejudicial error). Contrast *Commonwealth* v. *Miller*, 361 Mass. 644, 658-659 (1972) (evidence that police knew certain people had suspected the

---

[2] The defendant objected when this witness was asked what Mrs. Hess had said after they informed her of her husband's death. The objection was solely on hearsay grounds. The judge in effect ruled that he was admitting the evidence as a spontaneous exclamation. The defendant does not pursue the hearsay point on appeal, and with good reason. See *Commonwealth* v. *Puleio*, 394 Mass. 101, 104-105 (1985).

[3] The defendant did not raise this point explicitly as an objection to the admission of these opinions. The defendant's objections at trial to admission of the conversation appear to be based on hearsay grounds. When, as part of her response to a general question, Mrs. Hess testified to her opinion, the defendant did not move to strike the opinion portion of her testimony on the ground of irrelevancy. The same is true with respect to the police officer's testimony. We shall assume, nevertheless, in the defendant's favor, that the issue was properly preserved for appeal.

defendant, admissible, not to prove guilt but for the limited purpose of showing good cause for subsequent undercover activity and thus to rebut a claim of entrapment).

Although Mrs. Hess's opinion that the defendant was the one who had killed her husband should not have been admitted, its admission could not have had a significant influence on the jury. It was clear that her opinion was not the result of personal or first-hand knowledge of what had happened earlier that morning on Fort Pond Road. Mrs. Hess's involvement with the defendant was fully developed at trial. The defendant does not challenge the admissibility of that evidence, which, among other things, disclosed in great detail the intimate, on-and-off relationship between Mrs. Hess and the defendant, her knowledge that the defendant owned and used weapons, and her further knowledge that the defendant had been harassing her husband by driving past him repeatedly while he jogged. As Mrs. Hess said on cross-examination and as defense counsel argued to the jury, her reaction was instinctive based on what she knew. Equally true was the fact that what she then knew did not and could not establish the defendant's guilt. Mrs. Hess's conclusion was only an opinion, not a factual assertion, as the jury unquestionably knew. The defendant was not prejudiced by Mrs. Hess's identification of him as the one the police should pursue. On the facts then known to Mrs. Hess and presented to the jury, the reasons for her conclusion were obvious and, on the evidence, the case against the defendant was not made any stronger by admission of her opinion. We infer that trial counsel, who never objected to the admission of her opinion as such, agreed.

2. On appeal the defendant has correctly identified an error in that portion of the judge's charge in which he attempted to define the difference between murder in the first degree and murder in the second degree. The charge, significant portions of which are set forth in the margin,[4] improperly equated de-

_____

[4] "Has the Government proved deliberate premeditation? Because it is deliberate premeditation which distinguishes murder in the first degree from murder in the second degree.

"Now, deliberate premeditation does not, in the law, mean sitting down and planning; it is for you to decide whether the evidence establishes that

liberate premeditation with the "intent to kill" prong of malice aforethought and thereby relieved the Commonwealth of its burden to prove not only malice but also deliberate premeditation.[5]

The defendant did not object to the charge at trial or to the judge's failure to give his requested instructions concerning deliberate premeditation. We, therefore, consider the point only pursuant to our duty to review convictions of murder in the first degree under G. L. c. 278, § 33E (1984 ed.).

The Commonwealth argues that "deliberate premeditation" was clear to the jury without definition. Even if that dubious assumption is correct, the charge effectively eliminated deliberate premeditation as a significant element in a finding of murder in the first degree. The jury were told that an intention to kill was sufficient to warrant a finding of guilty of murder in the first degree and were not told that deliberate premeditation was a significant component of the crime in addition to the malice that could be found in an intention to kill.

The Commonwealth further argues that any error was not so significant as to require reversal of the conviction because

beyond a reasonable doubt, but I tell you it's not necessary that there be any particular period of time between the intent to kill and the killing, because all that deliberate premeditation means, in this context, is an intent, not merely to seriously injure, but an intent to kill.

"So, to convict of Murder in the First Degree, the Government must prove that it was Mr. Lennon who killed Mr. Hess, unlawfully, as a result of intending to kill him."

[5] Although we recognize that evidence permitting a finding of deliberate premeditation involves little, if anything, more than evidence supporting a finding of malice based on an intent to kill, we have always recognized deliberate premeditation as a distinct element of the crime. In a practical sense, the requirement of proof of premeditation provides a means by which a jury could return a verdict of murder in the second degree even though they believed that the defendant intended to kill the victim.

Deliberate premeditation was fully discussed in the leading case of *Commonwealth* v. *Tucker*, 189 Mass. 457, 486-495 (1905). It has been defined in various words of the same substance. See *Commonwealth* v. *Dalton*, 385 Mass. 190, 196 (1982) (the defendant "reflected upon his resolution to kill"); *Commonwealth* v. *Blaikie*, 375 Mass. 601, 605 (1978) (the defendant's "resolution to kill was a product of cool reflection"); *Commonwealth* v. *Caine*, 366 Mass. 366, 374 (1974) ("the plan to kill was formed after deliberation and reflection").

the evidence warranted a finding that the defendant killed the victim with deliberate premeditation. Although such a finding was warranted, and the defendant does not contend otherwise, any inadequacy in the charge is not thereby mitigated. We cannot fairly accept the argument "that the jury would have reached no different result had they been instructed more fully as to premeditation." The charge relieved the Commonwealth of its burden to prove deliberate premeditation beyond a reasonable doubt. We cannot assume in fairness that the error made no difference in the jury's verdict.

The Commonwealth argues next that any error is not important because deliberate premeditation was not a live issue at trial. The defendant's focus at trial was on his claim that he did not shoot the victim. The defendant did not concede, however, that the killer acted with deliberate premeditation. In arguing his motion for a required finding of not guilty, defense counsel contended that there was insufficient evidence of premeditation. In his closing argument, defense counsel briefly mentioned the Commonwealth's burden to prove deliberate premeditation. Because of the theory of the defense, one would not expect much more comment on the point, as a matter of tactics.

There are some cases in which we have not reversed a conviction, even though the judge's charge failed to define the elements of the crime properly, because the error related to an issue not actively contested at trial. See *Commonwealth* v. *Shea*, 398 Mass. 264, 269 (1986); *Commonwealth* v. *Gabbidon*, 398 Mass. 1, 5 (1986); *Commonwealth* v. *White*, 392 Mass. 282, 286-287 (1984) (charge assumed to be erroneous). These are cases in which the standard of review and our appellate function were not, as here, prescribed by G. L. c. 278, § 33E. See *Commonwealth* v. *Freeman*, 352 Mass. 556, 563-564 (1967).[6]

---

[6] In many opinions we have described the tests under the *Freeman* standard and the § 33E standard in words which suggest that the tests may be identical. The *Freeman* opinion says that "[t]he test is whether there is a substantial risk of a miscarriage of justice." *Commonwealth* v. *Freeman, supra* at 564. We have said that the § 33E test, in so-called "capital cases," is whether

We are aware of no case, such as this, subject to review under G. L. c. 278, § 33E, in which we have been willing to overlook a charge that completely failed to instruct on a necessary element of proof of murder in the first degree. We have tolerated, however, an erroneous charge on malice that was more favorable to the defendant than he deserved. See *Commonwealth* v. *Puleio*, 394 Mass. 101 (1985). Two Justices disagreed even on that point. See *id.* at 110 (Nolan, J., dissenting, with whom Liacos, J., joins). If a defendant conceded at trial that the victim was murdered, we have not reversed a conviction of murder in the first degree where the instruction on malice, not challenged below, may have misplaced the burden of proof. See *Commonwealth* v. *Ely*, 388 Mass. 69, 74 (1983); *Commonwealth* v. *Pisa*, 384 Mass. 362, 363-364 (1981); *Commonwealth* v. *Lee*, 383 Mass. 507, 511-512 (1981). Cf. *Commonwealth* v. *Mandeville*, 386 Mass. 393, 407 (1982) (malice charge given, even if deficient, related to issue not contested at trial).

If a conviction of murder in the first degree cannot stand because of error or because of the requirements of justice (G. L. c. 278, § 33E), but the jury's determination that the defendant was guilty of murder is not infected with error, we have the option of directing a reduction in the verdict to murder in the second degree rather than ordering a new trial. See *Commonwealth* v. *Bellamy*, 391 Mass. 511, 516 (1984); *Com-*

---

there is a "substantial likelihood that a miscarriage of justice has occurred." *Commonwealth* v. *Garcia*, 379 Mass. 422, 439 (1980), quoting *Commonwealth* v. *Roberts*, 378 Mass. 116, 123 (1979). Some of our opinions have not worried over the distinction because it did not matter and have used either the word "likelihood" or "risk" when the other word was the traditionally correct one. We have, however, suggested that the standard of the *Freeman* case appears to be a harder one for a defendant to satisfy than the standard of § 33E. *Commonwealth* v. *Richmond*, 379 Mass. 557, 562 n.4 (1980).

There is a greater burden on this court in review of a conviction under § 33E than in circumstances governed by the standard of the *Freeman* case because our duty under § 33E is broader. *Commonwealth* v. *Cole*, 380 Mass. 30, 38 (1980). We must seek a result that may be more consonant with justice. *Commonwealth* v. *Davis*, 380 Mass. 1, 15 n.20 (1980). Our duty to review the whole record exists under § 33E and not otherwise.

*monwealth* v. *Rego*, 360 Mass. 385, 397 (1971). We will normally exercise that option where the Commonwealth has requested (as it did at oral argument in this case) that we do so, rather than grant a new trial at which the Commonwealth might prove murder in the first degree. See *Commonwealth* v. *Brown*, 392 Mass. 632, 645 (1984). We direct the entry of a verdict of murder in the second degree pursuant to our power under G. L. c. 278, § 33E.[7]

*So ordered.*

---

[7] Once we have directed the entry of a lesser verdict, our duty to consider the record under § 33E probably no longer exists. In any event, the defendant makes no argument under § 33E with respect to any error not considered above. We have found no basis in the record for granting a new trial under § 33E. Certainly no further reduction in the verdict is indicated under applicable § 33E principles.