COMMONWEALTH *vs.* MICHAEL F. SKINNER.

Middlesex. April 3, 1990. - July 18, 1990.

Present: LIACOS, C.J., WILKINS, LYNCH, O'CONNOR, & GREANEY, JJ.

*Homicide. Malice. Practice, Criminal,* Instructions to jury, Presumptions and burden of proof. *Error,* Harmless.

At a first degree murder trial the judge's incorrect supplemental instruc-
tion to the jury on the element of deliberate premeditation, in response
to a jury question on that issue, improperly relieved the Commonwealth
of its burden of proof on both deliberate premeditation and the element
of malice aforethought [92-96]; where the issue of premeditation was
contested at trial and where the evidence of premeditation was not so
overwhelming that it could be determined beyond a reasonable doubt
that the verdict was based on the evidence and not on the erroneous
instruction, the error was not harmless and a new trial was required
[96-99].

INDICTMENT found and returned in the Superior Court De-
partment on July 30, 1985.

The case was tried before *Hiller B. Zobel,* J., and a mo-
tion for a new trial was heard by him.

*James L. Sultan* for the defendant.

*Margaret C. Parks,* Assistant District Attorney, for the
Commonwealth.

LYNCH, J. On February 4, 1986, the defendant, Michael
F. Skinner, was found guilty by a jury of both murder in the
first degree and unlawfully carrying a firearm. He timely ap-
pealed from the murder conviction, citing as error the trial
judge's supplemental instruction in response to a jury ques-
tion regarding deliberate premeditation.

Represented by new counsel, Skinner filed a motion for a
new trial in this court, raising the same error as that noted in
his appeal, as well as claiming that he had been denied effec-
tive assistance of counsel at trial. We remanded that motion

and stayed the appeal pending a ruling on the motion by the trial judge. After a hearing, the judge denied the motion for a new trial and issued a memorandum addressing the merits of both arguments. The defendant appealed from that decision, and this appeal was consolidated with the appeal from his conviction. Because we believe the judge's supplemental instruction was erroneous, we remand for a new trial.[1]

The jury could have found the following facts. At the time of their fateful encounter Skinner and the victim, Robert Cahill, worked together at Webb Converting Company in Framingham. Skinner began placing bets on baseball games, through Cahill, with a "bookie" whom the victim knew, but the defendant did not. As a result of a losing wager on a June 27, 1985, game, the defendant owed $480, and Cahill was pressing him for payment by Friday, July 5.

In the intervening week Skinner appeared nervous and agitated over the gambling debt and its looming deadline. Two fellow employees testified that he told them on separate occasions that he had a "very large problem," was in "some kind of trouble," and that they would be reading about him in the newspapers soon, because he "would either be in jail or dead." One coworker, a trainee of the defendant, testified that, when he learned Skinner's problem was a gambling debt of some $500, he offered to loan Skinner the money, but that the defendant declined, saying he would handle the problem himself. Two days later, according to the trainee, when Skinner again brought up the subject of his problem, the defendant said a meeting had been set and the problem would be resolved then, because he "had his gun scoped."

By prior agreement Skinner and Cahill had arranged to meet on Friday, July 5. According to the defendant, the victim had reminded him that he should have all the money because the "bookie" would not wait. Before going to bed the night of July 4, Skinner testified that he removed his father's

<hr>

[1]The Commonwealth has requested in response to an inquiry from the court at oral argument that, in the event we find error in the charge, we order a new trial rather than reduce the degree of guilt to murder in the second degree.

.22 caliber rifle from its rack, loaded it with seven bullets, wrapped it in a towel, and placed it next to the driver's seat in his automobile. He stated that he was fearful of what might happen at his meeting with Cahill when he finally told him that he could not pay the $480, and thus took the gun to protect himself, and to scare or threaten Cahill, if necessary, to make sure no one harmed him or his family.

At noon on July 5, 1985, Skinner and the victim met at a restaurant in Framingham. After some discussion the defendant suggested that Cahill drive to Webb Converting, which was operating with a "skeleton crew" that day, to continue their conversation, and the victim agreed.[2]

On arriving at the Webb Converting parking lot the two automobiles were parked so that the men could converse without leaving their vehicles. In the course of disputing the debt the defendant heard what he perceived as threats, picked up the rifle, and shot Cahill in the head, killing him instantly.

1. *The supplemental instruction.* After deliberating for approximately two hours and forty-five minutes the jury sent the judge the following question: "Are there any circumstances under which a person can aim a gun with the intention of killing without premeditating, not including self-defense or authorized killing; in other words, does the process of cocking and aiming a gun constitute premeditation?" Af-

---

[2]At trial the defendant testified that Cahill started asking him at the restaurant about the money he owed, and that the two began arguing. When the heated conversation, involving mention of gambling and "bookies," started attracting the attention of other patrons, the defendant said he made the suggestion to move the argument to the nearby and likely empty parking lot at Webb Converting. Skinner's employer at Webb testified that, in a discussion with the defendant one week after his arraignment in which the defendant acknowledged he killed Cahill and told the employer what had happened, he had basically recounted this same synopsis of the encounter at the restaurant.

However, in Skinner's tape-recorded confession to police the morning of July 6, 1985, played for the jury and admitted in evidence at trial, he stated that there was no talk of money at all at the restaurant and no unpleasantness, and that he had suggested going to Webb Converting "to be alone. I didn't want anybody around . . . ."

ter informing both counsel, in the presence of the defendant, of the gist of his intended response to this question, the judge answered the jury question thus:

> "The answer to your question is the process of cocking and aiming a gun can constitute premeditation if it is followed by an act which is performed with the intent to kill, or to create a plain and strong likelihood that death or grievous bodily harm would follow, or to do grievous bodily harm. Put another way, the cocking and aiming in a vacuum, as it were, does not constitute anything, but if the cocking and aiming is followed by a firing of the gun with the intent to kill, or to create a plain and strong likelihood that death or grievous bodily harm would result, or to do grievous bodily harm, *then the set of facts found by the jury beyond a reasonable doubt would constitute first-degree murder*" (emphasis added).

Defense counsel did not object to this instruction. The jury retired to resume deliberations, and returned some fifteen minutes later with a verdict of guilty of murder in the first degree.

In his June 9, 1989, memorandum of law denying the defendant's motion for a new trial, the judge stated: "Logically, and mechanically, cocking and aiming precede firing. If the firing then takes place with the requisite criminal intent, *the sequence (particularly the act of aiming) permits the inference of some amount of deliberation* . . . . Thus, the Court's answer to the jury's question was fair and accurate and no ground for a new trial." (Emphasis added and citation omitted.)

The defendant argues that the judge's supplemental instruction (a) unconstitutionally collapsed the element of premeditation into that of malice, thus allowing reasonable jurors to have understood that, on their finding that certain subsidiary facts were committed with malice, the element of premeditation was presumed, and (b) denied the jury their

option of concluding that there was no premeditation and returning a verdict of murder in the second degree.

2. *Standard of review.* Although the defendant did not object at trial to the judge's supplemental instruction, there are several factors which have impact upon the standard of review. We are required to review the defendant's conviction under G. L. c. 278, § 33E (1988 ed.). The record is considered in light of the verdict. The applicable standard is whether, on review of the entire record as considered in light of the verdict returned by the jury, a substantial likelihood exists that a miscarriage of justice has occurred. *Commonwealth* v. *Dickinson,* 394 Mass. 702, 707 (1985).

Furthermore, since the new trial motion, the review of which is also before us, raises the same issue in regard to the adequacy of the supplemental instruction, that issue has been "restored to the appellate agenda," and may be reviewed as fully as if the defendant timely objected. *Commonwealth* v. *Buckley,* 17 Mass. App. Ct. 373, 374 (1984). See *Commonwealth* v. *Gagne,* 367 Mass. 519, 526 (1975); *Commonwealth* v. *McGrath,* 361 Mass. 431, 435 n.5 (1972); *Commonwealth* v. *Miranda,* 22 Mass. App. Ct. 10, 18 (1986).

With that, we turn to an examination of the error asserted in the judge's supplemental instruction.

3. *Analysis of instruction's discussion of deliberate premeditation.* With sophisticated precision, the jury's query focused on the distinction between the elements of malice and premeditation involved in murder in the first degree.

The due process clause of the Fourteenth Amendment to the United States Constitution protects defendants from conviction and deprivation of liberty "unless the prosecution proves beyond a reasonable doubt every element of the charged offense." *Carella* v. *California,* 491 U.S. 263, 265 (1989). *In re Winship,* 397 U.S. 348, 364 (1970). *Commonwealth* v. *Munoz,* 384 Mass. 503, 509 (1981). Deliberate premeditation is a distinct element of the crime of murder in the first degree. *Commonwealth* v. *Lennon,* 399 Mass. 443, 447 n.5 (1987). *Commonwealth* v. *Blaikie,* 375 Mass. 601, 605 (1978). It is true, of course, that we have recognized

that "evidence permitting a finding of deliberate premeditation involves little, if anything, more than evidence supporting a finding of malice based on an intent to kill," *Commonwealth* v. *Lennon, supra*, and that many cases have "blurred the distinction" between deliberate premeditation and malice aforethought. See J.R. Nolan & B.R. Henry, Criminal Law § 176, at 129 (2d ed. 1988). Nonetheless there is a difference, *id.*, and it has been defined as follows:

> "[W]hile it must be shown that a plan to murder was formed after the matter had been made a subject of deliberation and reflection, yet in view of the quickness with which the mind may act, the law cannot set any limit to the time. It may be a matter of days, hours, or even seconds. It is not so much a matter of time as of logical sequence. First the deliberation and premeditation, then the resolution to kill [malice], and lastly the killing in pursuance of the resolution; and all of this may occur in a few seconds." *Commonwealth* v. *Tucker*, 189 Mass. 457, 494-495 (1905).

The distinction between the two elements not only exists, but is a very crucial one: While malice is a required element of murder in the second degree, as well as murder in the first degree, and is what distinguishes murder from manslaughter, see *Lannon* v. *Commonwealth*, 379 Mass. 786, 790 (1980); *Commonwealth* v. *Greene*, 372 Mass. 517 (1977), deliberate premeditation is one of the three factors making a murder one of first degree. G. L. c. 265, § 1 (1988 ed.). See *Commonwealth* v. *Puleio*, 394 Mass. 101, 107-108 (1985). In a case such as the one at bar, where there is no allegation or evidence of extreme cruelty or atrocity, or a murder in the commission of a felony, deliberate premeditation is "an essential element" of murder in the first degree, which the Commonwealth must prove beyond a reasonable doubt. *Commonwealth* v. *Blaikie, supra*.

The judge responded to the jury's pointed question on premeditation by emphasizing and twice defining the types of

intent sufficient to find malice. He concluded by telling the jurors, if they indeed found the subsidiary facts — cocking and aiming — occurred, and were followed by another — firing — done with malice, "then the set of facts found by the jury beyond a reasonable doubt would constitute first-degree murder." He did not redefine premeditation, discuss the thought process and resolution it contemplates (even if occurring within seconds), or contrast it with "action which is taken so spontaneously that there is no time to think." *Commonwealth v. Callahan*, 401 Mass. 627, 633 (1988). Given the jury's very specific question, revealing a need for assistance in exploring the heart of the distinction between murder in the first and second degree, the judge's silence on premeditation "fell short of providing a comprehensible standard to guide them." *Commonwealth v. White*, 353 Mass. 409, 425 (1967), cert. denied, 391 U.S. 968 (1968).[3] The jury could have understood this instruction as relieving the Commonwealth of its burden to prove deliberate premeditation as well as malice, in order for them to return a verdict of murder in the first degree. *Commonwealth v. Lennon, supra* at 447.

The judge informed the jury, not only that they *could* infer premeditation from certain subsidiary facts and malice, but that the finding of those facts and malice *"would* constitute first-degree murder" (emphasis supplied). Jury instructions that relieve the government of its burden of proof on an element of a crime by way of a mandatory presumption or irrebuttable direction not only violate the defendant's due

---

[3]The Commonwealth asserts that the judge, in analyzing for the jury "the process of cocking and aiming" a rifle, was addressing not just the physical acts involved, but the thinking and decision making that necessarily accompany those acts. With the jury's question as focused as it was on whether certain facts constituted premeditation, if the judge's intention was indeed to encompass the cerebral implications of the physical actions of cocking and aiming, he should have made that intention express to them. In these circumstances leaving unstated this aspect of the judge's thinking would make for inadequate instructions, as measured by the overall impact of his explanation on the jury. *Commonwealth* v. *Callahan*, 401 Mass. 627, 631 (1988).

process rights, but "invade the truth-finding task assigned solely to juries in criminal cases." *Carella* v. *California*, 491 U.S. 263, 265 (1989). The test whether an instruction was put to the jury in such form, rather than as a legitimate permissible inference that could be drawn from the subsidiary facts, "depends upon the way in which a reasonable juror could have interpreted the instruction." *Commonwealth* v. *Moreira*, 385 Mass. 792, 794 (1982), quoting *Sandstrom* v. *Montana*, 442 U.S. 510, 514 (1979). The instruction given by the judge could well have been interpreted as a conclusive direction by him to find murder in the first degree once the jury were convinced of the facts raising the presumption.

The Commonwealth argues that the judge merely "inartfully" stated the law that such evidence would certainly support a conclusion, or could permit an inference, that the defendant deliberately premeditated his crime. But in the supplemental instruction, the jurors "were not told that they had a choice, or that they might infer that conclusion." *Sandstrom* v. *Montana, supra* at 515. They were told that, if they found the subsidiary facts plus malice as their question assumed, this was murder in the first degree. "[A] reasonable juror could easily have viewed such an instruction as mandatory." *Id.* See *Commonwealth* v. *Sires*, 405 Mass. 598, 600 (1989).[4]

Neither did the judge's main charge to the jury before they retired to deliberate cure the flaw of the supplemental instruction. Initially, the judge correctly described the Com-

---

[4]The Commonwealth also argues that the words "would constitute" are as "tentative," rather than "imperative," in tone as the words "could constitute" that the judge used in the first sentence of his supplemental instruction. One could more convincingly argue that the judge misspoke by a single letter in shifting verbs from "could" to "would." As we have said before in an analogous situation, "[w]hile there is but a small difference between 'must' and 'may,' we cannot . . . overlook aspects of a jury instruction which may have the effect of infecting the charge as a whole with error of constitutional dimension." *Commonwealth* v. *Callahan*, 380 Mass. 821, 825 (1980). The distinction in tone between "could" and "would,"' it seems to us, is no illusory one, despite what the Commonwealth would have us believe.

monwealth's burden to prove the elements of the crime alleged and delineated the distinction between murder in the first and second degree. However, considering the charge in its entirety we find nothing that clearly dispelled the impression that the cocking, aiming, and firing with malice constituted proof of premeditation beyond a reasonable doubt. Furthermore, correct language in the main charge "does not explain a constitutionally infirm [supplemental] instruction [and] will not suffice to absolve the infirmity." *Commonwealth* v. *Sires, supra* at 600, quoting *Francis* v. *Franklin*, 471 U.S. 307, 322 (1985). That is because the test for soundness is "what a reasonable juror *could* have understood the charge to mean, not what he was likely to understand" (emphasis in original). *Commonwealth* v. *Moreira, supra* at 796. Therefore, "we cannot discount the possibility that [Skinner's] jurors actually did proceed upon" this inaccurate interpretation. *Sandstrom* v. *Montana, supra* at 519. *Commonwealth* v. *Nieves*, 394 Mass. 355, 362 (1985).

Unless this error was harmless beyond a reasonable doubt, we must reverse the defendant's conviction. *Commonwealth* v. *Nieves, supra. Chapman* v. *California*, 386 U.S. 18, 24 (1967). The Commonwealth argues that the instruction's infirmity was indeed harmless by this standard, because (1) there was overwhelming evidence, beyond the cocking and the aiming of a rifle, from which the jury could have concluded the defendant premeditated his crime, and (2) premeditation was not a live issue at trial. These arguments, too, must fail.

The Commonwealth points to testimony from Skinner's coworker that the defendant turned down an offer of a loan, and then told the coworker the problem would be solved because the defendant "had scoped his rifle," as well as the facts that Skinner took his father's rifle, loaded it with seven bullets, and brought it with him to the meeting with Cahill, as other evidence of premeditation in the case. Such evidence, if believed, strongly supports a conclusion of premeditation, and warrants a verdict of murder in the first degree. However, that does not mitigate the inadequacy in the

charge. "[W]e cannot say beyond a reasonable doubt that the jury would have reached the same conclusion had it not been faced with the erroneous charge." *Commonwealth v. Sires, supra* at 601. *Commonwealth v. Lennon*, 399 Mass. 443, 448 (1987). That is especially the case when, having deliberated for more than two and one-half hours, the jury returned with a highly focused question, seeking to know whether cocking and aiming a gun constituted premeditation, and after receiving the judge's infirm supplemental instruction, returned fifteen minutes later with a verdict of murder in the first degree. This sequence of events indicates that the jury had been struggling with the question of deliberate premeditation, and thus we cannot say that they had been convinced beyond a reasonable doubt that it existed based on the other evidence permitting a finding of premeditation. See *Commonwealth v. Sires, supra.*

"[T]he question is not whether guilt may be spelt out of a record, but whether guilt has been found by a jury according to the procedure and standards appropriate for criminal trials." *Carella v. California*, 491 U.S. 263, 269 (1989) (Scalia, J., concurring), quoting *Bollenbach v. United States*, 326 U.S. 607, 614 (1946). Because, as we have observed, it is impossible to know whether the jury relied on an improper judicial instruction or on other strong facts elsewhere in the record, "[t]he fact that the reviewing court may view the evidence . . . as overwhelming is then simply irrelevant." *Connecticut v. Johnson*, 460 U.S. 73, 86 (1983). See *United Bhd. of Carpenters & Joiners v. United States*, 330 U.S. 395, 408-409 (1947). Therefore, we conclude other evidence in the record strongly indicative of premeditation does not render the judge's supplemental instruction harmless beyond a reasonable doubt.

Neither is there merit to the Commonwealth's assertion that the instruction was harmless because premeditation was not a live issue at trial. The defendant's theory was that, while he did shoot Cahill, he did so by accident. Although the Commonwealth is correct in characterizing malice as the pivotal element of the crime contested at trial, at no point

did the defendant concede (nor could he have logically done so, given his explanation of the fatal encounter) the issue of premeditation. See *Commonwealth* v. *Repoza*, 400 Mass. 516, 522 n.7, cert. denied, 484 U.S. 935 (1987). *Commonwealth* v. *Lennon, supra* at 448. Furthermore, defense counsel in his closing argument did outline features of the meeting between the defendant and the victim at Webb Converting on July 5, 1985, that would cast doubt on a premeditated plan to kill. Thus, premeditation "was a live issue and the error cannot be considered to be harmless beyond a reasonable doubt." *Commonwealth* v. *Repoza, supra.*[5]

Finally, the defendant has a statutory right to have the jury set the degree of murder. G. L. c. 265, § 1. *Commonwealth* v. *Repoza, supra* at 522 n.7. We have interpreted that statute to require a trial judge to instruct jurors of their option of finding a defendant guilty of murder in the second degree whenever there is evidence of murder in the first degree, "even though there appears to be no hypothesis in the evidence to support a verdict of murder in the second degree." *Commonwealth* v. *Brown*, 392 Mass. 632, 645 (1984). Thus, even in a case where the defendant's theory was that someone other than the defendant committed the killing and therefore malice was not actively disputed at trial, we said that, under G. L. c. 265, § 1, "there is always an element of intent for the jury to determine in murder cases in which the defendant does not concede that a conviction of murder in

---

[5]In contrast, the cases in which this court has found a jury instruction on an element of a crime constitutionally defective, and yet failed to reverse a conviction, have all involved defendants whose entire case challenged identity — that is, conceding the victim was murdered, but that someone other than the defendant committed it — and the standard of review was limited to the substantial risk of miscarriage of justice. See *Commonwealth* v. *Shea*, 398 Mass. 264, 269-270 (1986); *Commonwealth* v. *Gabbidon*, 398 Mass. 1, 5 (1986); *Commonwealth* v. *Ely*, 388 Mass. 69, 77 (1983); *Commonwealth* v. *Tavares*, 385 Mass. 140, 151, cert. denied, 457 U.S. 1137 (1982). As we have already noted in this case, we would have to find the infirm jury instruction, on a point not conceded by the defendant, to be harmless beyond a reasonable doubt in order to affirm the conviction.

the first or second degree would be warranted if the proper person were prosecuted." *Commonwealth* v. *Repoza, supra.*

Again, while the judge did instruct the jury on their option to find murder in the second degree in his main charge, his supplemental instruction could have been interpreted as depriving the jurors of the choice of murder in the second degree on making those predicate findings.

We reverse the order denying the defendant's motion, reverse the judgment, set aside the verdict of murder in the first degree, and remand the matter to the Superior Court for a new trial.

*So ordered.*